WO                                                                                                    SVK
**NOT FOR PUBLICATION**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Frank Gamez, | No. CV 08-2176-PHX-GMS (MEA) |
| Plaintiff, | **ORDER** |
| vs. | |
| Detective Jarvis, et al., | |
| Defendants. | |

Plaintiff Frank Gamez, who is in the custody of the Maricopa County Sheriff's Office, filed this civil rights action against employees of the City of Mesa Police Department. (Doc. #1.) Defendants Detectives Cascio and Ulibarri and Sergeant Cost move for summary judgment. (Doc. #37.) Defendant Jarvis moves to dismiss. (Doc. #39.) Although the Court issued a Notice advising Plaintiff of his obligation to respond to the motion to dismiss and a second Notice pursuant to Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998) (*en banc*), advising Plaintiff of his obligation to respond to the summary judgment motion, Plaintiff filed no responses. (Doc. ##40, 41.)

The Court will grant the motions and terminate the case.

**I.     Background**

In his Complaint, Plaintiff alleged three counts for excessive use of force against the Mesa Police Department and the following employees: Detectives Jarvis, Ulibarri, Rodriguez, Clarke, Cascio, Lines, and Quiviz; Police Officers Keeling and Nehrenz;

1 | Sergeant Cost; and Crime Scene Technician Douchet. (Doc. #1.) In all three counts, Plaintiff alleged that on August 20, 2008, he was dragged out of a closet and assaulted by the officers despite Plaintiff's lack of resistance. He alleged that he was repeatedly and severely kicked, choked, and tasered causing him to lose consciousness and requiring stitches for his injuries. He also alleged that Jarvis spit on him and that he was verbally abused. (Id.) The Court dismissed the Mesa Police Department and ordered the remaining Defendants to answer the Complaint.[1] (Doc. #7.)

Defendants Cascio, Ulibarri, and Cost move for summary judgment on the grounds that (1) Plaintiff's claims are barred by Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), (2) Defendants are entitled to qualified immunity, (3) their actions were objectively reasonable, and (4) there is no evidence to support Plaintiff's claims of injury. (Doc. #37.) Jarvis moves to dismiss on the ground that he has not been properly served. (Doc. #39.)

**II.     Motion for Summary Judgment**

    **A.     Legal Standards**

        **1.     Summary Judgment**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the

---

[1] The Court previously granted summary judgment to Defendants Rodriguez, Clarke, Keeling, Lines, Nehrenz, Quihuiz, and Doucet. (Doc. #35.)

governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). Rule 56(e) compels the non-moving party to "set out specific facts showing a genuine issue for trial" and not to "rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). However, Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial. Celotex, 477 U.S. at 322-23.

When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. But, if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 249-50.

**2.     Heck v. Humphrey**

To recover damages for harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus. Heck, 512 U.S. at 486-87. "A claim for damages bearing that relationship to a conviction

or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487. In other words, if the plaintiff's conviction or sentence arises out of the same facts that underlie the alleged unlawful behavior for which damages are sought, the § 1983 suit must be dismissed. Smithart v. Towery, 79 F.3d 951, 952 (9th Cir. 1996); see also Cunningham v. Gates, 312 F.3d 1148, 1155 (9th Cir. 2002) (finding that a conviction arising from crimes related to a robbery and subsequent gunfight with police barred § 1983 claims of excessive force because there was no break between the plaintiff's actions and the police response he claimed was excessive).

**B.     Parties' Contentions**

**1.     Defendants**

In support of their motion, Defendants submit a Statement of Facts (Doc. #38 (DSOF)); the affidavits of Cost, Cascio, and Ulibarri (id., Exs. 1-3) and Juan Ramos (id., Ex. 4); discovery responses (id., Exs. 5 and 6); Banner Desert Medical Center records (id., Ex. 7); Maricopa County Correctional Health records (id., Ex. 8); and documents from Maricopa County Superior Court Case No. CR2008-152304 (id., Ex. 9.)

Defendants assert that on August 19, 2008, Mesa Police Sergeant Cost and Detectives Cascio and Ulibarri assisted the Center Against Family Violence and the Mesa Police Department Major Felony Unit with a kidnapping/sex crimes investigation, in which Plaintiff, who had an outstanding kidnapping warrant from Colorado, was the suspect. (DSOF ¶¶ 1-2.) Plaintiff was also wanted in connection with a New Mexico kidnapping and sex crimes involving a minor. (Id. ¶ 3.) Intelligence information indicated that Plaintiff was affiliated with a gang, that he had been in prison for aggravated assault, and that he may be violent. (Id. ¶ 4.)

Cost and other detectives attempted to contact Plaintiff at one location, but he fled on foot; in the early morning hours of August 20, Plaintiff was relocated at the residence of 344 East 10th Avenue in Mesa. (Id. ¶¶ 6-7.) At the residence, Cost, Cascio, Ulibarri, and Detective Jarvis, a Special Deputy to the United States Marshal's Service Task Force, announced their presence in English and Spanish. (Id. ¶ 8.) They heard people yelling and

scrambling inside the house. (Id. ¶ 9.) A woman exited the house shaking and visibly scared; she pleaded with the detectives to help her. (Id. ¶ 12.) She said she was the homeowner, that a person matching Plaintiff's description had been in her house earlier, and that she was not sure if he was still inside. (Id. ¶ 13.) She gave the detectives consent to search her home and asked that they remove Plaintiff if he was there. (Id. ¶ 14.)

Defendants assert that detectives conducted a protective sweep of the home. (Id. ¶ 15.) When they announced their presence inside, the woman's brother came out, but no one else responded. (Id. ¶ 16.) Cost and Ulibarri proceeded to clear a northwest bedroom while Cascio and Jarvis cleared a southwest bedroom. (Id. ¶ 17.) The southwest bedroom was dark and contained a small 4′ by 4′ walk-in closet. (Id. ¶ 18.) Cascio searched the closet, using his foot to feel behind some clothes that were hanging a few feet from the floor. [SOF 19.] He felt an object with his foot, so with his duty weapon in one hand and a flashlight in the other, he moved the clothes to one side. (Id. ¶¶ 20-21.)

Cascio saw a man matching Plaintiff's description sitting behind the clothes. (Id. ¶ 22.) Cascio and Jarvis yelled, "Police, you are under arrest," and shouted several times for Plaintiff to show his hands and come out of the closet, but Plaintiff did not comply and, in the dark closet, Cascio could not see where Plaintiff's hands were. (Id. ¶¶ 23-24.) Jarvis entered the closet and attempted to take Plaintiff into custody, but Plaintiff struggled and was combative, striking Jarvis. (Id. ¶¶ 25, 27.) The only light available was from the detectives' flashlights. (Id. ¶ 26.)

Defendants assert that Cascio holstered his weapon and tried to help Jarvis take Plaintiff into custody; they continued to struggle with Plaintiff, who was resisting arrest and not complying with their commands. (Id. ¶¶ 28-29.) Plaintiff continued to hit Jarvis. (Id. ¶ 30.) Cascio struck Plaintiff's's thigh and leg area in an effort to control his lower body. (Id. ¶ 31.) Jarvis stated that he was being hit and asked for a taser. (Id. ¶ 32.)

Cost and Ulibarri ran into the bedroom and heard Jarvis asking for a taser. (Id. ¶ 33.) Cost saw Plaintiff kicking and throwing a fist at Jarvis and Cascio. (Id. ¶ 34.) Ulibarri, who was carrying a taser, could also see Plaintiff fighting with Jarvis. (Id. ¶¶ 38-39.) Defendants

assert that the taser is most effective when it is used from a distance; it then usually causes the subject's muscles to lock up, which makes it easier to gain control of him. (Id. ¶¶ 40-41.) When the taser cannot be used to maximum effect due to close distance, it can be used as a drive stun, although this is not as effective as tasing. (Id. ¶ 42.)

Ulibarri approached the closet and tased Plaintiff; both probes struck Plaintiff in the chest. (Id. ¶¶ 43-44.) But due to the close proximity, the taser had minimal effect, and Plaintiff continued to fight and kick Jarvis and Cascio. (Id. ¶ 45.) The detectives continued to yell, "Stop resisting, stop fighting," but Plaintiff did not. (Id. ¶ 46) Cascio attempted to grab Plaintiff's hands for handcuffing, and he attempted to grab his legs and pull him out of the closet. (Id. ¶ 47.) Ulibarri deployed the taser a second time, but it was still not affecting Plaintiff, who continued to fight. (Id. ¶¶ 48-49.)

Cost tried to pull Plaintiff out of the closet, but he was kicking his legs. (Id. ¶ 50.) Cost also tried to deliver some knee strikes and kicks to Plaintiff's legs because he was pulling them up in an attempt to keep them from being controlled. (Id. ¶ 51.) In the meantime, Ulibarri stopped the taser cycle so that neither Cascio nor Jarvis would be hit. (Id. ¶ 52.) Instead, Ulibarri attempted to deliver a drive stun to Plaintiff's legs and foot because he was still kicking and striking the detectives. (Id. ¶ 53.) The detectives were eventually able to get Plaintiff out of the closet. (Id. ¶ 54.) Plaintiff sat down with his fists clenched, tried to pull his arms down to his waist area, and tried to use his strength to break free from the detectives' grips. (Id. ¶ 55.) Cost became concerned that Plaintiff was trying to gain access to a weapon. (Id. ¶ 56.) The detectives were eventually able to roll Plaintiff onto his stomach and handcuff him. (Id. ¶ 57.)

After securing Plaintiff, detectives called the Fire Department to treat him and a crime scene technician to take photographs. Plaintiff's pulse and blood pressure were slightly elevated, but his respiratory rate, pupils, $O_2$ saturation, and skin were normal. (Id. ¶ 66.) He was able to walk unassisted, speak in full sentences, and he was awake and oriented as to time, place and event. (Id. ¶ 67.) He did not report any chest pain, nausea or vomiting, or shortness of breath. (Id. ¶ 68.) Plaintiff had a laceration on the top of his head that was

1  bandaged, and another small one above his left eyebrow. (Id. ¶ 69.) Police removed a taser
2  probe from him before treatment, and he was handcuffed. (Id. ¶¶ 70-71.) The
3  firefighters/paramedics did not see any signs of head trauma or signs that Plaintiff had
4  sustained any more than a superficial head injury, such as inability to answer questions as to
5  time, place and event, slurred speech, nausea or vomiting, trouble walking and/or speaking,
6  or lack of alertness/orientation. (Id. ¶ 72.) He never reported losing consciousness at any
7  time. (Id. ¶ 73.) Plaintiff was taken to Banner Desert Hospital, where he had x-rays and a
8  CT scan; he received five stitches.

9  On July 27, 2009, following a jury trial, Plaintiff was convicted on three counts of
10 sexual conduct with a minor, unlawful imprisonment, resisting arrest and aggravated assault
11 on Jarvis, all charges arising out of this investigation and apprehension. (Id. ¶ 91.)

12 Defendants argue that under Heck, Plaintiff's claims for use of excessive force are
13 barred by his conviction for resisting arrest. (Doc. #37 at 8.)

**2.    Plaintiff**

15 Plaintiff filed no response. Because a verified complaint may be used as an affidavit
16 opposing summary judgment if it is based on personal knowledge and sets forth specific facts
17 admissible in evidence, the Court will consider the allegations set forth in Plaintiff's
18 Complaint. Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995). Plaintiff asserted that
19 Defendants, generally, and Jarvis, specifically, beat him repeatedly, kicked him, and put him
20 in a choke hold. He alleges he was tased. Plaintiff asserts that he did not resist arrest. (Doc.
21 #1.)  **C.    Analysis**

22 The Court will grant Defendants' motion because they have demonstrated that there
23 is no genuine dispute of fact as to their entitlement to dismissal under Heck, and Plaintiff
24 fails to demonstrate the existence of a material factual dispute. Specifically, Defendants
25 establish that Plaintiff's conviction on charges of resisting arrest arises from the same facts
26 as Plaintiff's claims of excessive force against the officers, and Plaintiff offers no evidence
27 to dispute this. It is also undisputed that Plaintiff was convicted of resisting arrest and that

this conviction has not been expunged, reversed, invalidated or otherwise called into question. (Doc. #38, DSOF ¶ 91, Ex. 9.)

Under Arizona law, a defendant can only be convicted of resisting arrest if the officer's conduct was "lawful" when effecting the arrest; an officer's conduct was not "lawful" if he used excessive force. See Ariz. Rev. Stat. § 13-404(B)(2) (a person may not use physical force to resist arrest by an officer unless the physical forced used by the officer exceeds that allowed by law); State v. Fontes, 986 P.2d 897, 901 (Ariz. App. 1998) (if the force used to make the arrest is reasonable, the defendant is not justified in using physical force to resist the arrest); see also State v. Sanders, 575 P.2d 822, 826 (Ariz. App. 1978) (no unnecessary or unreasonable force shall be used in making an arrest and any excessive force used by an officer may be countered lawfully); see also State v. Celaya, 660 P.2d 849, 854 (Ariz. 1983) (§ 13-404(B)(2) justifies the use of force to resist an arrest "'that the person knows or should know is being made by a peace officer . . .' *if that officer is using force in excess of that allowed by law*") (emphasis added)). Thus, Plaintiff's conviction for resisting arrest means that any force used in effecting the arrest was reasonable. The issue for purposes of a Heck bar is whether the force alleged in the Complaint was, in fact, used during the arrest or whether there is evidence that it was used at some other point during Plaintiff's encounter with Defendants. See Smith v. City of Hemet, 394 F.3d 689, 697-98 (9th Cir. 2005).

In Smith, the Ninth Circuit drew a distinction between a plaintiff who resists officers before they use force and a plaintiff who resists during the course of the arrest and accompanying use of force. Id. The court identified different "phases" of the encounter between the plaintiff and the officer and held that if the plaintiff's conviction was for his resisting the officers during the "investigative phase"—before the officers began to arrest and use force against him—then Heck would not bar his claims that the force was excessive. Id. at 698. But if his conviction was for resisting the officers while they were effecting arrest and using the purportedly excessive force, then Heck would bar claims that the officers used excessive force. Id. at 698-99.

The Court will grant summary judgment because the evidence, which Plaintiff does not dispute, shows that, in fact, all of the excessive force alleged to have been used by Defendants was while Defendants were effecting Plaintiff's arrest. Because all of the force alleged to have been used by Defendants took place in the course of effecting Plaintiff's arrest and because Plaintiff's response to that force resulted in his conviction for resisting arrest, under <u>Heck</u>, Plaintiff's conviction is a bar to his § 1983 claims in Count I.

The Court will grant summary judgment to Cascio, Ulibarri, and Cost and dismiss the claims without prejudice. The Court need not address Defendants' additional arguments.

## IV. Motion to Dismiss

### A. Legal Standard

The Federal Rules of Civil Procedure provide that "[t]o serve a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf . . . a party must serve the United States and also serve the officer or employee under Rule 4(e), (f) or (g)." Fed. R. Civ. P. 4 (i)(3).

Rule 4(i)(1)(A)-(C) provides for service on the United States as follows:

(1) *United States.* To serve the United States, a party must:

(A)    (i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought – or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the clerk of the court – or

      (ii) send a copy of each by registered or certified mail addressed to the civil process clerk at the United States Attorney's office;

(B)    send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and

(C)    if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

Fed. R. Civ. P. 4(i)(1).

### B. Defendant's Contentions and Analysis

Defendant Jarvis asserts that Plaintiff served Jarvis on April 24, 2009. (Doc. #39 at 1, ref. Doc. # 24.) On May 18, 2009, counsel for Jarvis filed a notice of appearance,

1 notifying Plaintiff of Jarvis' status as a federal employee at the time of the events alleged in the Complaint. (Id.) The notice of appearance also directed Plaintiff to Rules 4(i) and 12(a)(2), which describe the procedures to serve a complaint on the United States when an officer or employee of the United States is sued and which set forth the time for the defendant to respond. (Id., ref. Doc. #25.)

The Notice of Appearance provided the following information about Jarvis's status as a federal employee:

> Defendant Jarvis, while employed as a detective by the Mesa City Police Department, is also specially deputized as a Deputy U.S. Marshal as part of a U.S. Marshal Service (USMS) Task Force. At the time of the events alleged in the Complaint, Defendant Jarvis was working in his capacity as a Special Deputy U.S. Marshal under the supervision of the USMS. Thus, at the time of the events alleged in the Compliant, Defendant Jarvis was acting within the scope of his federal employment.

(Id. at 2, ref. Doc. #25.) Defendant contends that although 14 months have elapsed since Plaintiff filed his Complaint and 8 months have elapsed since the above notice was sent, Plaintiff still has not served the United States as required by Rule 4(i). (Id. at 3.) Defendant argues that service is not complete and the Complaint should be dismissed. (Id.)

The Court notes that although the record does not reflect a return of service for service on the United States, Jarvis's motion is not accompanied by an affidavit as to his status as a federal employee. Nevertheless, the Court will grant the motion and dismiss the claim. The Court has the discretion under Local Rule of Civil Procedure 7.2(i) to deem Plaintiff's lack of response as a consent to the granting of Defendant's Motion to Dismiss. Plaintiff was warned of this possibility. (Doc. #40.) The Ninth Circuit has upheld a dismissal based on a failure to comply with a similar local rule in the District of Nevada. See Ghazali v. Moran, 46 F.3d 52, 53-54 (9th Cir. 1995). Before dismissal on this basis, the Court must weigh "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." Id. at 53 (quoting Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986)).

The first factor "always favors dismissal." Yourish v. Cal. Amplifier, 191 F.3d 983, 990 (9th Cir. 1999). The second factor usually favors dismissal, and this case is no exception. See Wanderer v. Johnston, 910 F.2d 652, 656 (9th Cir. 1990). There is no risk of prejudice to Defendant to resolve the motion in his favor, and judicial efficiency also favors resolution of this action. Public policy favors disposition of cases on their merits, so the fourth factor weighs against dismissal. Pagtalunan v. Galaza, 291 F.3d 639, 643 (9th Cir. 2002). But the Court notes that Plaintiff has failed to respond to several motions. (Doc. ##20, 37, 39.) For the fifth factor, dismissal without prejudice is the least drastic sanction.

In sum, the five-factor analysis weighs in favor of dismissal. The Court will deem Plaintiff's failure to respond as a consent to the granting of the motion.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants Cascio, Ulibarri, and Cost's Motion for Summary Judgment (Doc. #37) and Defendant Jarvis's Motion to Dismiss (Doc. #39).

(2) Defendants Cascio, Ulibarri, and Cost's Motion for Summary Judgment (Doc. #37) and Defendant Jarvis's Motion to Dismiss (Doc. #39) are **granted**, and the claims are **dismissed without prejudice.**

(3) The action is terminated, and the Clerk of Court must enter judgment accordingly.

DATED this 27th day of April, 2010.

G. Murray Snow
United States District Judge